DAVID J. MICLEAN (SBN 115098)
dmiclean@micleangleason.com
CARMEN M. AVILES (SBN 251993)
caviles@micleangleason.com
DANIELLE M. MIHALKANIN (SBN 271442)
dmihalkanin@micleangleason.com
MICLEAN GLEASON LLP
411 Borel Avenue, Suite 310
San Mateo, CA  94402
Telephone:  (650) 684-1181
Facsimile:  (650) 684-1182

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALTERG, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>v.<br><br>BOOST TREADMILLS LLC, a California Limited Liability Company; SEAN WHALEN; MICHAEL JAMES BEAN; THOMAS ALLEN; and Does 1 to 20,<br><br>        Defendants. | Case No. 3:18-cv-07568-EMC<br><br>**ALTERG, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6)** |

# Table of Contents

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT ...........................................................................................................3

A.      AlterG Has Put Defendants on Notice of Each Cause of Action.........................3

B.      AlterG's Complaint Satisfies Pleading Requirements for Direct, Indirect, and
        Willful Patent Infringement .................................................................................3

        1.      AlterG Does Need Not *Prove* Its Infringement Claims at the Pleading
                Stage..........................................................................................................3

        2.      Defendants Raise Improper Invalidity Defenses in Their Motion...........6

C.      AlterG Has Sufficiently Pled Its Trade Secret Misappropriation Cause of Action
        Under the DTSA ....................................................................................................7

D.      AlterG's Breach of Contract Claim Is Properly Pled........................................10

E.      Whalen Owes AlterG a Fiduciary Duty and Breached It ..................................11

F.      Defendants Have Wrongfully Interfered with Contracts and AlterG's Prospective
        Economic Advantage ..........................................................................................13

G.      Defendants Interfered with AlterG's Prospective Economic Advantage as Pled in
        the Complaint......................................................................................................14

H.      AlterG Has Sufficiently Pled Boost's False Advertising of the Boost One ......15

I.      AlterG Has Put Defendants on Notice of Their Trade Libel Against AlterG....17

J.      Defendants Have Unlawfully Competed Against AlterG....................................18

K.      AlterG's Conspiracy Claim Is Proper ...............................................................19

III.    LIBERAL POLICY OF AMENDING PLEADINGS ...........................................20

IV.     CONCLUSION......................................................................................................20

**Table of Authorities**

<u>**Cases**</u>

*AccuImage Diagnostics Corp v. Terarecon*, Inc., 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003) ............................................................................................................................... 19

*Addiction & Detoxification Inst. LLC v. Carpenter*, 620 F. App'x 934, 936 (Fed. Cir. 2015) ................................................................................................................................. 4

*Airhawk Int'l, LLC v. TheRealCraigJ*, 2016 U.S. Dist. LEXIS 189986 (C.D. Dist. Aug. 1, 2016) ............................................................................................................................... 15

*Aliya Medcare Fin., Ltd. Liab. Co. v. Nickell*, No. CV 14-07806 MMM(Ex), 2015 U.S. Dist. LEXIS 189214, at *45 (C.D. Cal. Oct. 28, 2015) ...................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 ..................................................................................................... 3

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ................................................................. 3

*Canard v. Bricker*, No. 14-cv-04986-JSC, 2015 U.S. Dist. LEXIS 22909, at *6 (N.D. Cal. Feb. 24, 2015) ...................................................................................................................... 13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 168, 180 (1999) ........................... 18

*Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1222-26, (Fed. Cir. 1988) .......................................... 6

*Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (1968) ........................................................... 8

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2017) ...................................... 4

*E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015-16 (N.D. Cal. 2016) ..................................... 11

*Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084 (N.D. Cal. 2012) ......................................... 10

*Erhlich v. Etner*, 224 Cal. App. 2d 69 (1964) .......................................................................... 17

*Farhang v. Indian Inst. of Tech.*, No. C-08-02658 RMW, 2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010) ............................................................................................................. 9

*Geodata Sys. Mgmt. v. Am. Pac. Plastic Fabricators, Inc.*, No. CV 15-04125 MMM (JEMx), 2015 U.S. Dist. LEXIS 193679 (C.D. Cal. Sep. 21, 2015) ....................................... 9

*Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 413-14 (2007) ...................................................... 12

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012).................................................................................................................. 4

*Jasmine Techs., Inc. v. Rodime, Inc.*, Case No. C 89-1379 BAC, 1992 U.S. Dist. LEXIS 14627, at *7 (N.D. Cal. Sep. 8, 1992) .................................................................... 19

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) .................... 4

*Logtale, Ltd. v. IKOR, Inc.*, No. C 11-5452 CW, 2013 U.S. Dist. LEXIS 115059 (N.D. Cal. Aug. 14, 2013) ....................................................................................................... 9

*Luxul Tech., Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) ............... 18

*Mag Aero. Indus. v. B.E. Aero., Inc.*, 816 F.3d 1374, 1379-80 (Fed. Cir. 2016) ................... 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ............. 3

*McKell v. Wash. Mut.*, Inc., 142 Cal. App. 4th 1457, 1473 (2006) ...................................... 18

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1282-83, reh'g denied, USSC cert. dismissed (Fed. Cir. 2017) ................................................................................... 6

*N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-cv-02575-HSG, 2016 U.S. Dist. LEXIS 131684, at *85 (N.D. Cal. Sep. 26, 2016) ..................................................................... 12

*N. Star Gas Co. v. Pac. Gas & Elec*. Co., No. 15-cv-02575-HSG, 2016 U.S. Dist. LEXIS 131684, at *88 (N.D. Cal. Sep. 26, 2016) ..................................................................... 14

*Nelson Bros. Prof'l Real Estate LLC v. Jaussi*, No. SA CV 17-0158-DOC (JCGx), 2017 U.S. Dist. LEXIS 219769, at *15 n.1 (C.D. Cal. Mar. 23, 2017) ....................................... 10

*Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766, 733 (1985) ...................................... 17

*Persson v. Smart Inventions, Inc*., 125 Cal. App. 4th 1141, 1159 (2005) ............................. 12

*Physician's Surrogacy, Inc. v. German,* No. 17CV0718-MMA (WVG), 2017 U.S. Dist. LEXIS 135325, at *26 (S.D. Cal. Aug. 23, 2017) ..................................................... 7, 8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 829 (N.D. Cal. 2016) ................................................................................................... 19

*Premiere Innovations, Inc. v. IWAS Indus., LLC,* No. 07cv1083 BTM (BLM), 2007 U.S. Dist. LEXIS 72755, at *10 (S.D. Cal. Sep. 28, 2007) .................................................... 8

*Premiere Innovations, Inc. v. IWAS Indus., LLC,* No. 07cv1083 BTM(BLM), 2007 U.S. Dist. LEXIS 72755, at *10 (S.D. Cal. Sep. 28, 2007) .................................................... 8

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-cv-3059-BTM-AGS, 2017 U.S. Dist. LEXIS 171757, at *7-8 (S.D. Cal. Oct. 16, 2017) .................................................. 15

*Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 984-85 (N.D. Cal. 2010) ...................... 16

*Rockwell Collins, Inc. v. Wallace*, 2017 U.S. Dist. LECIS 190361 *5 (C.D. Cal. Nov. 10, 2017) ......................................................................................................................... 7

iii

*Rockwell Collins, Inc. v. Wallace*, 2017 U.S. Dist. LEXIS *4 190361 (C.D. Cal. Nov. 10, 2017) ........................................................................................................................ 9

*Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990) ............................ 6

*Shum v. Intel Corp.*, No. C-02-03262-DLJ, 2008 U.S. Dist. LEXIS 83005, at *24 (N.D. Cal. Sep. 26, 2008) ...................................................................................................... 12

*Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *3-4 (N.D. Cal. Feb. 16, 2017) ............................................................................................. 9

*Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223, 1230 (1991) ............................................. 12

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ................................................................ 15

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-211, 2016 U.S. Dist. LEXIS 130918, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) ...................... 10

*Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017) .................................... 11

*TMC Aerospace v. Elbit Systems of America, LLC*, 2016 U.S. Dist. LEXIS 182652 *5 (C.D. Jan. 29, 2016) .......................................................................................................... 8

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1142 (N.D. Cal. 2015) .............................................................................................................. 11

*United States Appliance Corp. v. Beauty Shop Supply Co.*, 121 F.2d 149, 151, 50 USPQ (BNA) 40, 42-43 (9th Cir.), cert. denied, 314 U.S. 680, 62 S. Ct. 180, 86 L. Ed. 544 (1941) ........................................................................................................................... 7

*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) .......................................................... 19

*Via Techs., Inc. v. Asus Comput. Int'l*, No. 14-cv-03586-BLF, 2017 U.S. Dist. LEXIS 17384, at *10 (N.D. Cal. Feb. 7, 2017) ......................................................................... 10

*Wright v. Coules*, 4 Cal. App. 434 (1906) .................................................................................... 17

**Statutes**

18 U.S.C. 1839(5) .......................................................................................................................... 9

Cal. Bus. & Prof. Code § 17200 ................................................................................................... 18

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 3

Rule 12(b)(6) .................................................................................................................................... 3

Rule 15(a) ....................................................................................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Other Authorities</u>**

5B C. Wright & A. Miller, Federal Practice and Procedure § 1356, p. 354 (3d ed. 2004)........................ 3

David Bohrer, Threatened Misappropriation of Trade Secrets: Making A Federal (DTSA)
    Case Out of It, 33 Santa Clara High Tech. L. J. 506, 521 (2017)........................................................ 7

Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376 ........................................ 9

Rest.2d Torts, § 629, com. f, p. 350........................................................................................................ 17

1    **I.    INTRODUCTION**

2         Defendants'[1] motion to dismiss is primarily an effort to explain their purported "independent

3    development" of the Boost One treadmill, and to cast aspersions on their former employer AlterG, Inc.

4    ("AlterG").  This is most evident from Defendants' claim that they will challenge patent validity on

5    "another day," but then proceed to gratuitously dump on an AlterG patent, claiming various alleged

6    prosecution bars even though defendants know they are prevented from challenging patent validity by

7    assignor estoppel.[2]  Defendants' motion is replete with unsupported argument requiring heightened and

8    particularized pleading standards that do not exist, and are not required in a pleading intended to simply

9    provide notice of the claims against the Defendants.

10        As to AlterG's patent claims, Defendants' motion essentially demands the complaint provide

11   infringement claim charts and claim constructions.  But that is not what is required in an initial

12   pleading.  The Northern District Patent Local Rules ("PLR") provide for when claim charts are

13   required.  Further, AlterG is not required to prove its infringement claims or engage in claim

14   construction at the pleading stage.  AlterG has pled infringement of its patents by Defendants according

15   to what is required under current patent pleading standards.  Similarly, Defendants' motion as to

16   AlterG's claim for violation of the Defend Trade Secrets Act ("DTSA") appears to confuse pleading

17   standards for the California Uniform Trade Secret Act ("CUTSA") with what is required for the DTSA.

18   AlterG has standing to plead a DTSA claim for Defendants' misappropriation and has adequately

19   advised defendants of the nature and type of trade secrets they misappropriated to develop their product

20   and business.

21        Despite referencing all non-disclosure and confidentiality agreements the Defendants signed

22   with AlterG and alleging specific terms and the multiple acts in breach of those contracts in over 5

23

24   ───────────────

[1] "Defendants" refers to all the defendants named in the complaint (Boost Treadmills LLC, Sean

25   Whalen, Michael James Bean, and Thomas Allen).

26   [2] The doctrine of assignor estoppel prevents Defendants from raising any invalidity challenges to

27   AlterG's patents, since Defendant Whalen is a named inventor on the AlterG's patents, and the other
     defendants are in privity with Whalen and AlterG.  (See *infra*, section B. (2).)  It is also telling that if
     defendant Whalen's invalidity positions prove to be accurate, he may be liable for committing fraud on

28   the United States Patent and Trademark Office ("USPTO") and the investors of AlterG.

ALTERG'S OPPOSITION TO MOTION TO DISMISS                          CASE NO. 3:18-cv-07568-EMC

1   pages of the complaint, Defendants complain that AlterG's complaint fails to detail how each

2   individual breached their contracts with AlterG.  This is nonsense.  AlterG provides detailed factual

3   allegations pertaining to the contracts at issue, the dates, terms, and how Defendants breached them,

4   i.e., misappropriating AlterG's trade secrets to start a competing business.  Likewise, Whalen's claim

5   that the breach of fiduciary duty claim is not viable because he breached the duty after he stopped

6   working for AlterG makes no sense.  As an owner, board member, shareholder, employee, and

7   consultant, Whalen owed a fiduciary duty to AlterG.  Whalen is not excused from his breach and

8   misappropriation because it was not discovered until after he stopped working for the company.

9       As to AlterG's interference claims, AlterG has specifically identified the contracts at issue, and

10   the dates and terms, sufficient to put Defendants on notice of the contracts at issue that were interfered

11   with.  AlterG is not required at this stage to identify each and every vendor, supplier, and customer the

12   Defendants have tried to interfere with through their false statements, trade libel, and unfair

13   competition.

14       AlterG has also sufficiently pled interference with prospective economic advantage.  Defendants

15   claim that AlterG's cause of action does not identify the customer relationships and what Defendants

16   knew of and did to disrupt the relationships.  This argument has no merit, as AlterG's 32-page

17   Complaint is a testament to Defendants' disruption of AlterG customer relationships.  As AlterG has

18   alleged, Defendants (all former AlterG employees and consultants) had knowledge of AlterG's

19   customers, vendors, suppliers, and prospects, which Defendants then contacted to bad mouth AlterG

20   and AlterG products while falsely representing the capabilities of the inferior Boost treadmill.

21   Similarly, Defendants' claim that the false advertising cause of action doesn't particularize the alleged

22   false advertising wholly ignores the Defendants' specific false statements that AlterG has laid out in the

23   complaint.  (*See* Compl., ¶¶ 134-135 re false statements regarding weight calibration, safety features,

24   suitability for medical markets, wide market adoption, endorsement by "top athletes" and "Hollywood

25   stars," and intentional conflation of the Boost One treadmill with the Woodway 4Front treadmill.)

26   AlterG has also adequately pled its trade libel and unfair competition counts for Defendants ripping-off

27   of AlterG's intellectual property and efforts to malign AlterG and AlterG products.  Lastly, AlterG's

28   conspiracy cause of action is properly alleged against all Defendants as a stand-alone claim based on

2

the 162 paragraphs of the complaint that outline how all the Defendants jointly conspired to infringe and misappropriate AlterG's intellectual property and harm AlterG.  Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) ("Motion") lacks merit and should be dismissed.

## II.    ARGUMENT

### A.    AlterG Has Put Defendants on Notice of Each Cause of Action

All that is required in a pleading is to alert the defendant of what is alleged and plead the elements of the causes of action.  Federal Rule of Civil Procedure 8(a)(2) requires only a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  With that liberal pleading standard, the purpose of a motion under Rule 12(b)(6) is "to test the formal sufficiency of the statement of the claim for relief."  5B C. Wright & A. Miller, Federal Practice and Procedure § 1356, p. 354 (3d ed. 2004).  Under Rule 8(a), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678.  "The plausibility standard is *not* akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (emphasis added).  Further, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

AlterG provided substantially more allegations regarding the Defendants' malfeasance than the minimum required under Rule 8 – it provided a 32-page detailed complaint with sufficient facts to put Defendants on notice of their wrongful acts for each cause of action.  *See AlterG v. Boost Treadmills LLC, et al.,* Compl., D.I. 1 (filed December 17, 2018).

### B.    AlterG's Complaint Satisfies Pleading Requirements for Direct, Indirect, and Willful Patent Infringement

#### 1.    AlterG Does Need Not *Prove* Its Infringement Claims at the Pleading Stage

Defendants' motion essentially wants AlterG to prematurely provide infringement contentions and claim constructions to prove its case in the complaint.  That is not required at the pleading stage.

Defendants improperly seek to hold AlterG to a higher pleading standard than what is currently required under the Federal Rules of Civil Procedure.  Even though AlterG's Complaint:  (1) identifies at least one claim that is infringed for each and every patent; and (2) identifies the Boost One as the infringing product, Defendants seek dismissal of AlterG's direct infringement claim because AlterG's "infringement allegations are untethered to any limitation-by-limitation explanation of infringement." *See* Motion, 7.  Further, Defendants seek perfunctory dismissal of AlterG's indirect and willful infringement claims because, Defendants allege, there is no direct infringement.  *See* Motion, 11 ("[T]here can be no indirect infringement in the absence of direct infringement"), 12 (willfulness cannot be demonstrated since "Plaintiff has failed to plausibly and adequately plead a claim for direct infringement").  Defendants' "devil is in the details" element-by-element analysis of infringement (or non-infringement, as Defendants assert) is improper at the pleading stage, as AlterG is simply not required to *prove* that it is entitled to relief at this early point in the case.

Patent complaints must "contain sufficient factual allegations such that a reasonable court could, assuming the allegations were true, conclude that the defendant infringed." *Addiction & Detoxification Inst. LLC v. Carpenter*, 620 F. App'x 934, 936 (Fed. Cir. 2015).  As the Federal Circuit recently explained when reversing an order dismissing patent infringement claims under *Twombley* and *Iqbal*, "[s]pecific facts are not necessary"; the opposing party need only be given "fair notice of what the [infringement] claim is and the ground upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2017).  In other words, a party alleging patent infringement need not "'prove its case at the pleading stage.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012) (warning against requiring a "level of factual specificity" in pleading patent infringement that "would be dangerously close to requiring a plaintiff to prove he is entitled to relief at the pleading stage")).

AlterG has pled direct, indirect, and willful infringement for each of the asserted patents with enough specificity such that a reasonable court could conclude that the Defendants infringed.  For example, AlterG has pled, for each of the asserted patents, a description of each patent. *See e.g.*, Compl., ¶ 49 ("the '716 Patent claims various embodiments of Differential Air Pressure systems" that

have a height adjustable sealing chamber that "[receives] a portion of a user's body" and seals the "chamber to the user's body"); *and see* Compl., ¶¶ 55, 61, 67, and 73.  These descriptions serve to explain the various embodiments contained within each patent, without asserting any particular construction of the claims, but providing enough of a description to put Defendants on notice of direct and indirect infringement.

AlterG has also pled that one or more claims of each asserted patent have been infringed by the Defendants.  For example, AlterG has pled that Defendants have infringed "at least claims 1 and 2 of the '716 Patent literally or under the doctrine of equivalents, directly or indirectly, including knowingly and specifically intending to contribute to or induce infringement by others or alone."  Compl., ¶ 50; see also ¶¶ 56 (identifying claim 1 of the '656 Patent), 62 (identifying claims 1 and 15 of the '764 Patent), 68 (identifying claims 1 and 27 of the '795 Patent), and 74 (identifying claims 1 and 24 of the '572 Patent).[3]

Further, AlterG has identified a specific Boost product, the "Boost One treadmill," for each allegation of infringement, putting Defendants on further notice of infringement of each of the asserted patents.  *See* Compl., ¶¶ 52, 57, 64, 70, and 75.  AlterG has also alleged that Defendants have willfully infringed the asserted patents because Defendants had prior knowledge of the AlterG patents and patented technology, as Boost's co-founders were made up of an inventor of AlterG's patents and former employees of AlterG that were intimately involved with AlterG's product development and sales. *See* Compl., ¶¶ 54, 60, 66, 72, 78, and 79.

As AlterG's allegations in the Complaint are sufficient to raise a reasonable expectation that discovery will reveal that Defendants are liable for the misconduct alleged, Defendants' Motion to Dismiss AlterG's patent infringement claim should be denied.

---

[3] Although the Defendants would have AlterG include its infringement contentions and associated claim charts within its complaint (*see* Motion, 7), the Patent Local Rules detail the proper procedure for serving "a chart identifying where and how each limitation of each asserted claim is found within each Accused Instrumentality," after the Initial Case Management Conference.  See Pat. L.R. 3-1.

### 2.   Defendants Raise Improper Invalidity Defenses in Their Motion

Despite stating that "challenging validity is for another day," Defendants, with knowledge of the doctrine of assignor estoppel, casually and repeatedly assert that the '716, '764, and '656 patents are invalid because a purported online article featuring the P200 was published on August 18, 2006 and a P200 was allegedly sold to the Washington Wizards in or around fall 2006.[4]  Defendants, however, will not have "another day" as they are prevented wholesale from challenging invalidity of the patents based on the doctrine of assignor estoppel.

"Assignor estoppel is an equitable remedy that prohibits an assignor of a patent, or one in privity with an assignor, from attacking the validity of that patent when he is sued for infringement by the assignee." *Mag Aero. Indus. v. B.E. Aero., Inc.*, 816 F.3d 1374, 1379-80 (Fed. Cir. 2016).  "Privity, like the doctrine of assignor estoppel itself, is determined upon a balance of the equities." *Id.* at 1380 (citing *Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed. Cir. 1990)).  The equities favor applying the doctrine to an inventor's new company when there is a close relationship between the inventor and his new company.  *Id.*  The Federal Circuit also recently confirmed that the doctrine of assignor estoppel is alive.  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1282-83, reh'g denied, USSC cert. dismissed (Fed. Cir. 2017) (citing *Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1222-26, (Fed. Cir. 1988) in which the Federal Circuit emphasized the continued vitality of the doctrine of assignor estoppel after *Lear*).

Here, Defendant Whalen is a named inventor of all the asserted AlterG patents.  Defendant Whalen stopped working for AlterG to found Boost with Defendants Allen and Bean (who were also former AlterG employees involved with the development and sale of AlterG products).  Defendant Whalen cannot challenge validity of the patents on which he is being sued.  *See* Compl., ¶¶ 19-21. Defendants Allen and Bean, as two former employees of AlterG who left AlterG to found Boost with Defendant Whalen also cannot challenge the validity of the asserted patents.  *See* Complaint, ¶¶ 25-39,

---

[4] Defendants' effort to malign certain AlterG patents is not a pleading issue.  Further, to the extent these allegations have any grain of truth, Mr. Whalen may be guilty of fraud on the USPTO, as he was an inventor and had a duty to disclose information material to patentability under 37 C.F.R. 1.56.  Mr. Whalen may also be further liable for fraud on AlterG's investors, as he was the person involved in pitching investors and made no such prior disclosure as to any question of the patents' validity.

34-35.  Defendants Allen and Bean left AlterG long after the asserted patents were filed and some of the asserted patents had already issued.  See Compl., ¶¶ 24, 28, 35.  Defendants Allen and Bean (with Defendant Whalen) were also intimately involved with AlterG's development and sales of is Anti-Gravity systems and, conversely, intimately involved (with Defendant Whalen) in the development and sales of the infringing Boost One treadmill.  As Defendants Boost, Allen, and Bean are in privity with Whalen and AlterG, they are similarly precluded from challenging the validity of the asserted patents.  *See Shamrock Techs., Inc.*, 903 F.2d at 793 (citing *United States Appliance Corp. v. Beauty Shop Supply Co.*, 121 F.2d 149, 151, 50 USPQ (BNA) 40, 42-43 (9th Cir.), cert. denied, 314 U.S. 680, 62 S. Ct. 180, 86 L. Ed. 544 (1941) (privity between assignor and co-developer of infringing device with company they formed to advance their interests in infringing device)).  Based on the foregoing, Defendants should be precluded from raising any invalidity defenses at the pleading or any other stage of this case.

## C.     AlterG Has Sufficiently Pled Its Trade Secret Misappropriation Cause of Action Under the DTSA

AlterG has met the Rule 8 pleading standard for pleading its trade secret cause of action under the Defend Trade Secrets Act ("DTSA").  Contrary to Defendants' apparent argument, there is no requirement to disclose the plaintiff's trade secrets in the complaint.  *Rockwell Collins, Inc. v. Wallace*, 2017 U.S. Dist. LECIS 190361 *5 (C.D. Nov. 10, 2017). ).  As the court in *Physician's Surrogacy, Inc. v. German,* No. 17CV0718-MMA (WVG), 2017 U.S. Dist. LEXIS 135325, at *26 (S.D. Cal. Aug. 23, 2017) stated, "the Court applies general pleading standards [to a DTSA cause of action], which require plausibility as opposed to particularity."  *Physician's Surrogacy, Inc. v. German,* No. 17CV0718-MMA (WVG), 2017 U.S. Dist. LEXIS 135325, at *26 (S.D. Cal. Aug. 23, 2017).  *See* David Bohrer, Threatened Misappropriation of Trade Secrets: Making A Federal (DTSA) Case Out of It, 33 Santa Clara High Tech. L. J. 506, 521 (2017) (stating that the DTSA "does not incorporate the [CUTSA] requirement . . . that . . . the plaintiff must identify its relevant trade secrets with 'reasonable particularity'").

AlterG's complaint identifies the nature of its trade secrets, including:  the "numerous learnings from AlterG's Low-Cost Platform Project that explored market alternatives that included positive and negative learnings of low cost mechanical unweighted systems, air pressure systems, and Differential

Air Pressure systems under strict confidentiality and non-disclosure agreements (Compl., ¶ 40)," the "trade secrets are related to AlterG's development of anti-gravity rehabilitation products that are used in interstate commerce" (Compl., ¶ 96), and "information related to AlterG's design and development of its anti-gravity rehabilitation units, including, but not limited to its marketing and product strategy, cost strategies, material selection and fabrication techniques, engineering and structural technology, selection and qualification of components, knowledge of vendors with appropriate, specialized skills, and technology innovation." Compl., ¶102.[5] AlterG has provided sufficient detail and is not required to "spell out the details for the trade secret to avoid a demurrer to a complaint." *Premiere Innovations, Inc. v. IWAS Indus., LLC,* No. 07cv1083 BTM(BLM), 2007 U.S. Dist. LEXIS 72755, at *10 (S.D. Cal. Sep. 28, 2007), citing *Diodes*, *Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (1968).

Defendants do not cite to one DTSA case for the proposition that a plaintiff must plead with "particularity" a DTSA cause of action, and Defendants cannot because courts have rejected this very same argument. *See Physician's Surrogacy, Inc. v. German,* No. 17CV0718-MMA (WVG), 2017 U.S. Dist. LEXIS 135325, at *26 (S.D. Cal. Aug. 23, 2017) ("In other words, the Court finds unpersuasive Defendants' argument that Plaintiff must plead DTSA claims with particularity. *Rockwell Collins, Inc. v. Wallace, No.* SACV 17-01369 AG (JCGx), 2017 U.S. Dist. LEXIS 190361, at *5-6 (C.D. Cal. Nov. 10, 2017) ("the DTSA claim. Federal Rule of Civil Procedure 8 doesn't include a "particularity" requirement"). AlterG has plead with sufficient facts its trade secret cause of action and put Defendants on notice of the type of AlterG trade secrets at issue. That is all that is required under Rule 8. *Rockwell*

---

[5] Plaintiffs alleging less factual allegations have passed muster at the pleading stage. *See TMC Aerospace v. Elbit Systems of America, LLC*, 2016 U.S. Dist. LEXIS 182652 *5 (C.D. Cal. Jan. 29, 2016) (alleged "proprietary design drawings, manufacturing techniques, and manufacturing equipment" concerning a de-icing system); *Premiere Innovations, Inc. v. IWAS Indus., LLC,* No. 07cv1083 BTM (BLM), 2007 U.S. Dist. LEXIS 72755, at *10 (S.D. Cal. Sep. 28, 2007) (alleging "the Product's design, manufacture, pricing, and market opportunity").

*Collins, Inc. v. Wallace*, 2017 U.S. Dist. LEXIS *4 190361 (C.D. Nov. 10, 2017) ("[D]etailed factual allegations" aren't necessary at this early stage.") [6]

Defendants also argue that AlterG's trade secret cause of action should be dismissed because the alleged acts occurred before the DTSA came into effect.  This argument is disingenuous and wrong.  "The DTSA applies to "any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of [the] Act." Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376.  Further, the plain language of the Act defines misappropriation to include "*disclosure or use* of a trade secret without the consent of another." 18 U.S.C. 1839(5) (emphasis added.) AlterG has alleged that Defendant Boost was ostensibly formed at the end of 2016 (Compl., ¶ 36.), beginning in mid-2017 AlterG began hearing rumors that the former AlterG employee Defendants were developing an impact reduction device (Compl., ¶ 37.), at that time AlterG was not aware of the Defendants intellectual property infringement and misappropriation (*Id.*), and that Defendants introduced the Boost One product at the end of 2017 which infringes AlterG's patents and was developed utilizing numerous AlterG trade secrets. Compl., ¶ 38.  Defendants, thus, did not disclose their misappropriation of AlterG's trade secrets until 2017.  AlterG could not have known of Defendants' misappropriation when Defendants left AlterG's employment.  The misappropriation was not disclosed until the Boost One product was released in 2017.  Whalen and Allen both left AlterG's employ in 2015 and Bean left AlterG in 2017.  Compl, ¶¶  24, 29, and 35 respectively.  Defendants' misappropriation may have started in 2015, but it has continued to at least the development and release of the Boost One product which occurred after the DTSA came into effect.  Similar to the plaintiff in *Via Techs*, "the facts supporting the

---

[6] Defendants cite to *Geodata Sys. Mgmt. v. Am. Pac. Plastic Fabricators, Inc.*, No. CV 15-04125 MMM (JEMx), 2015 U.S. Dist. LEXIS 193679 (C.D. Cal. Sep. 21, 2015), *Logtale, Ltd. v. IKOR, Inc.*, No. C 11-5452 CW, 2013 U.S. Dist. LEXIS 115059 (N.D. Cal. Aug. 14, 2013), and *Farhang v. Indian Inst. of Tech.*, No. C-08-02658 RMW, 2010 U.S. Dist. LEXIS 53975 (N.D. Cal. June 1, 2010) for the proposition that the pleading requirement for a trade secret cause of action must be with "particularity." But, all these cases deal with pleading a CUTSA (California Uniform Trade Secret Act) cause of action, not a DTSA claim.  Indeed, these cases predate the effective date of the DTSA.  Defendants also cite to *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *3-4 (N.D. Cal. Feb. 16, 2017), but that was brought under the DTSA and CUTSA.  There, unlike here, the plaintiff's allegations were so bare bones that it was unable to satisfy the pleading requirement under Rule 8.  These cases are inapplicable as AlterG has provided sufficient allegations for a DTSA claim.

[] continuing trade secret misappropriation past May 11, 2016 were not made available [until after]." *Via Techs., Inc. v. Asus Comput. Int'l*, No. 14-cv-03586-BLF, 2017 U.S. Dist. LEXIS 17384, at *10 (N.D. Cal. Feb. 7, 2017).  A defendant's continued use of the misappropriated trade secrets after the DTSA's date of enactment is actionable under the DTSA.  *Nelson Bros. Prof'l Real Estate LLC v. Jaussi*, No. SA CV 17-0158-DOC (JCGx), 2017 U.S. Dist. LEXIS 219769, at *15 n.1 (C.D. Cal. Mar. 23, 2017); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15-211, 2016 U.S. Dist. LEXIS 130918, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (finding that defendant could bring a DTSA counterclaim against plaintiff because plaintiff continued to use defendant's intellectual property to directly compete with defendant after the date of the enactment of the DTSA).  AlterG has properly pled its trade secret cause of action with sufficient factual allegations as required, and Defendants' continuous misappropriation falls squarely under the DTSA.

### D.      AlterG's Breach of Contract Claim Is Properly Pled

To plead a breach of contract, all that is required is to allege (1) the existence of a contract; (2) performance or excuse for nonperformance; (3) breach; and (4) damage.  *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084 (N.D. Cal. 2012).  AlterG has alleged that Defendant Whalen signed multiple invention and non-disclosure agreements agreeing to keep confidential and not use or disclose AlterG's confidential information (Compl., ¶ 20), and AlterG listed the various agreements between Whalen and AlterG and the dates of same with citation to the definition of confidential information in the latest agreement.  *Id.*, fn. 2.  AlterG further alleged that Defendant Allen also signed multiple non-disclosure and confidentiality agreements with AlterG (Compl., ¶ 26) including the dates of those agreements (*Id.*, fn. 3).  AlterG also alleged that Defendant Bean signed multiple invention and non-disclosure agreements agreeing to keep in confidence and not use AlterG's proprietary and confidential information including its business plans, past or future financing, marketing, forecasts, customer buying patterns, customer capital equipment budget cycles, pricing, customer information, the salaries, duties, qualifications, performance levels, and terms of compensation of other employees, and/or cost or other financial data concerning any of the foregoing or the Company and its operations generally, and other information concerning the Company's actual or anticipated business, research or development, or which is received in confidence by or for the Company from any other person.  Compl., ¶34 and fn.4.

Since the agreements included confidentiality provisions that survived termination, all the Defendants' confidentiality agreements with AlterG were referenced.  AlterG has alleged more than the minimum requirement to plead its breach of contact cause of action against each individual Defendant.  AlterG has pled not only the existence of the various contracts for each Defendant, but also the type of contract, the dates, and the direct citations to exemplars of the confidentiality and non-disclosure provisions.  (*See above.*)  Defendants argue that the allegations are vague because it is unclear which contract was breached, but there is no ambiguity in AlterG's pleading.  AlterG refers in the plural to the agreements after identifying all of the contracts for each Defendant.  Furthermore, AlterG makes clear that "the Defendants have materially breached their agreements with AlterG by integrating and using AlterG's proprietary and confidential information in development of the Boost treadmill products."  Compl., ¶ 91 (emphasis added).

AlterG has alleged with sufficient factual allegations all that is required to plead a breach of contract cause of action against Defendants Whalen, Allen, and Bean.  *See E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1015-16 (N.D. Cal. 2016) ("Many of the facts alleged in the amended complaint center around Pavlos's unauthorized use of EDC's 'intellectual property and confidential information,' which the Confidentiality Agreement is, at least in part, designed to protect. . . .For purposes of stating a claim upon which relief may be granted, EDC has adequately pled the existence of a contract.").

### E.    **Whalen Owes AlterG** a **Fiduciary Duty** a**nd Breached It**

To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary relationship, breach, and damages.  *United Energy Trading, LLC v. Pac. Gas & Elec. Co*., 146 F. Supp. 3d 1122, 1142 (N.D. Cal. 2015).  The complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times.  *Terraza v. Safeway Inc*., 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017) (internal citations omitted).  The court may also be able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed.  *Id*.  After all, "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage."  *Id*.  AlterG has pled that Defendant Whalen was the founder of AlterG (Compl., ¶ 19), a board member (*Id*.), and shareholder of AlterG (Compl., ¶ 23), and that Whalen breached his fiduciary duty when Whalen took and used

AlterG's proprietary and confidential trade secret information for his own benefit (Compl., ¶ 17). Whalen does not dispute that there *was* a fiduciary relationship between himself and AlterG, only that the complaint is purportedly deficient because there was (according to Whalen) purportedly no fiduciary relationship at the time of the alleged breach.  Motion, 18-19.  Whalen's argument is flawed in several respects.

Initially, a fiduciary relationship does not end by the mere ending of an employment relationship. *Aliya Medcare Fin., Ltd. Liab. Co. v. Nickell*, No. CV 14-07806 MMM(Ex), 2015 U.S. Dist. LEXIS 189214, at *45 (C.D. Cal. Oct. 28, 2015).  If that was the case, any person owing a fiduciary duty could simply leave his employment and take whatever actions against partners, officers, directors, shareholders, or the corporation he pleased.  *Id.*  Additionally, a fiduciary relationship can be found in other contractual relationships such as in a consultancy.[7]  *See Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 413-14 (2007) ("The absence of a representative capacity, however, does not necessarily excuse such a provider from any duty of loyalty; an 'adviser may be subject to a fiduciary duty of loyalty even when the adviser is not acting as an agent.'").  Defendant Whalen cannot escape the fiduciary duty he owed to AlterG as a board member, employee, consultant, or shareholder.  *N. Star Gas Co. v. Pac. Gas & Elec. Co.*, No. 15-cv-02575-HSG, 2016 U.S. Dist. LEXIS 131684, at *85 (N.D. Cal. Sep. 26, 2016) ("the existence of a fiduciary relationship is a matter of fact").  Further, the passage of time does not shield Defendant Whalen from his breach.  *See Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223, 1230 (1991) (breach of fiduciary duty claim is based on the concealment of facts, and the statute of limitation does not begin to run until a plaintiff discovers the facts that have been concealed).

Defendants' citations to *Shum* and *Persson* are inapposite.  These cases deal with whether partners owe a fiduciary duty to one another.  In *Shum v. Intel Corp.*, No. C-02-03262-DLJ, 2008 U.S. Dist. LEXIS 83005, at *24 (N.D. Cal. Sep. 26, 2008) two partners started a partnership that was later dissolved.  One of the partners later prosecuted patents after the company was dissolved.  The court held there was no breach of fiduciary duty as to the other partner.  *Id.* at 24-25.  In *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1159 (2005) the court again dealt with whether there was a

---

[7] Defendant Whalen became a consultant for AlterG when he moved to Estonia.  Compl., ¶ 21.

1    fiduciary relationship between partners after the partners decided to incorporate the business.  There the

2    court did not find a breach of fiduciary relationship because the partners did not have a pre-incorporation

3    agreement that would provide for a fiduciary relationship.  *Id.* ("In short, the courts will enforce pre-

4    incorporation agreements among partners or joint venturers who have incorporated in order to carry out

5    the agreement between or among the partners or joint venturers.  This, however, is not such a case.").

6    Defendants fail to provide any case supporting their proposition that a fiduciary who was no longer a

7    board member, consultant, or employee at the time of the breach (AlterG could not have known of the

8    breach until the Boost One product was released) simply avoids a breach of fiduciary duty claim on that

9    basis.  The breach of fiduciary duty claim is adequately pled.

10        **F.    Defendants Have Wrongfully Interfered with Contracts and AlterG's Prospective**

11                **Economic Advantage**

12           Defendants claim that AlterG has not identified with "particularity" the alleged contracts, but

13    there is no such requirement in pleading an interference of contract cause of action.  To state a claim for

14    intentional interference with contract, a plaintiff must allege facts to support a valid contract,

15    defendant's knowledge of the contract, defendant's intentional acts designed to induce a breach of the

16    contract, actual breach, and damage.  *Canard v. Bricker*, No. 14-cv-04986-JSC, 2015 U.S. Dist. LEXIS

17    22909, at *6 (N.D. Cal. Feb. 24, 2015).  AlterG has sufficiently pled each element.  AlterG has pled the

18    existence of each of the Defendants own confidentiality agreement with AlterG (Compl., ¶ 122), the

19    confidentiality agreement between AlterG and Woodway (Compl., ¶ 123), and each of those vendors,

20    suppliers, and customers.

21           Further, AlterG pled that that Defendants have engaged in a campaign to discredit AlterG as a

22    company (Compl., ¶45), have told AlterG customers and prospects false statements to denigrate AlterG

23    – falsely claiming AlterG is going out of business and in poor financial health (*Id.*), and that AlterG

24    technology is inferior to Boost (it is not) (*Id.*).  AlterG has further pled that Defendants' interference has

25    placed it in a competitive disadvantage and prevented performance (Compl., ¶ 125).  Defendants'

26    arguments regarding not being on notice of the contracts at issue and breach of the alleged contracts are

27    without merit.  AlterG has pled with extensive facts the non-disclosure agreements between AlterG,

28    each of the Defendants, and Woodway.  AlterG has further pled that Defendants have breached those

13

1    agreements to AlterG's detriment.  That is all that is needed at the pleading stage.  *See N. Star Gas Co.*

2    *v. Pac. Gas & Elec*. Co., No. 15-cv-02575-HSG, 2016 U.S. Dist. LEXIS 131684, at *88 (N.D. Cal. Sep.

3    26, 2016).

4         **G.    Defendants Interfered with AlterG's Prospective Economic Advantage** a**s Pled in the**

5              **Complaint**

6         As to Interference with prospective economic advantage, Defendants similarly argue that AlterG

7    has not identified what customer relationships in which Defendants have interfered.  To state a claim for

8    intentional interference with prospective business advantage under California law, a plaintiff must

9    allege:  (1) an economic relationship between the plaintiff and some third party with the probability of

10   future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional

11   acts, apart from the interference itself, by defendant designed to disrupt the relationship; (4) actual

12   disruption; and (5) economic harm to the plaintiff proximately caused by the acts of defendant.  *Id*.

13   AlterG has sufficiently pled this cause of action.

14        AlterG has alleged it invested substantial capital and effort to develop and maintain its

15   commercial relationship with Woodway, and with AlterG's prospective and current customers.  Compl.,

16   ¶ 129.  AlterG has also pled that Defendants have engaged in a campaign to discredit AlterG as a

17   company (Compl., ¶45), have told AlterG customers and prospects false statements to denigrate AlterG

18   – falsely claiming AlterG is going out of business and in poor financial health (*Id*.), and that AlterG

19   technology is inferior to Boost (it is not) (*Id*.).  AlterG has further pled that these relationships represent

20   the probability of future economic business with which AlterG has relied to meet its business goals.

21   Compl., ¶ 130.  As former employees of AlterG, Defendants were aware of these prospective

22   relationships.  Compl., ¶ 131; *and see N. Star Gas Co. v. Pac. Gas & Elec. Co*., No. 15-cv-02575-HSG,

23   2016 U.S. Dist. LEXIS 131684, at *89-90 (N.D. Cal. Sep. 26, 2016) (court found plaintiff has

24   adequately pled interference by pleading defendants intentionally sought to induce the termination of

25   plaintiff's customers' accounts by making false statements to them in customer care calls and in false

26   EDIs sent to Plaintiff).

27

28

### H. AlterG Has Sufficiently Pled Boost's False Advertising of the Boost One

AlterG devotes more than a page of its complaint in setting forth Defendant's false claims regarding the Boost One.  To establish a false advertising claim under the Lanham Act, a plaintiff must allege:  (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.  *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-cv-3059-BTM-AGS, 2017 U.S. Dist. LEXIS 171757, at *7-8 (S.D. Cal. Oct. 16, 2017) (internal citations omitted.)

Here, AlterG has alleged with particularity the false statements Defendants have made regarding their product. Specifically, Defendants have made the following false claims about the Boost One:  it has finely calibrated air pressure adjustment (it does not), it is safe, precise, and suitable for use in medical applications and markets (it is not safe or approved for medical use), it has received wide market adoption (it has not), and has been endorsed by top athletes and Hollywood stars (it has not been). Compl., ¶¶ 44, 134-135.  These false statements are likely to deceive consumers about the nature, characteristics, and quality of the Boost One.  Compl., ¶ 44, Lines 2-4.  Further, Defendants' deception is material because it falsely claims attributes that the Boost One does not have, thus misleading consumers as to the actual limited performance, imprecise calibration, and safety concerns related to the Boost One (Compl., ¶ 44).  Defendants have also disseminated their false statements in person and over the internet (Compl., ¶ 44, fn. 6).  These false statements not only are intended to equate the inferior Boost One to AlterG's products, but they also harm AlterG's reputation, goodwill, and market position by deceiving consumers (Compl., ¶ 44).  Defendants' false advertising of the Boost One also harms the market for air pressure unweighting machines.  Contrary to Defendants' assertion that AlterG has not identified the advertisements, AlterG has done so with specific details.  These allegations are sufficient to plead a false advertisement cause of action.  *See Airhawk Int'l, LLC v. TheRealCraigJ*, 2016 U.S. Dist. LEXIS 189986 (C.D. Dist. Aug. 1, 2016).

1    Defendants also argue that AlterG's cause of action must fail because the allegations are directed

2    at Defendants as a group and not at each individual Defendant.  Citing *Swartz v. KPMG LLP*, 476 F.3d

3    756 (9th Cir. 2007), Defendants argue that Rule 9(b) does not allow allegations to be directed at multiple

4    defendants.  However, *Swartz* was a fraud complaint, not a false advertising claim.  The court in *Swartz*

5    did not address the pleading standard generally under Rule 9(b) for other causes of action.  Indeed, the

6    *Swartz* court, even as to the fraud count stated that there "is no absolute requirement that where several

7    defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false

8    statements made by each and every defendant."  *Swartz v. KPMG LL*P, 476 F.3d 756, 764 (9th Cir.

9    2007).

10    Here, AlterG alleges that all Defendants made the false advertising representations either directly

11    or through their website and webpages, or as agents of each other.  False advertisement allegations as to

12    multiple defendants have been found to be sufficient at the pleading stage.  *See Airhawk Int'l, LLC v.*

13    *TheRealCraigJ*, 2016 U.S. Dist. LEXIS 189986 against Defendants TheRealCraigJ, LLC and Craig

14    Johnson (collectively, the "Johnson Defendants") (Airhawk pled in the complaint that the "Johnson

15    Defendants' marketing materials for their motorcycle-seat cushion products falsely and deceptively

16    advertise both that its products were 'designed using clinically proven medical seating technology' and

17    that they have medical and therapeutic benefits (e.g., reduces lower back pain).  *Id*. ¶¶ 69-70, 74.

18    AirHawk alleges that the advertisements are designed to fraudulently entice consumers, distributors, and

19    resellers to purchase Wild Ass products over AirHawk's products and, as a result, have harmed

20    AirHawk's business. *Id*. ¶¶ 75, 77-78.").  *Id*. at 2.

21    In addition, the complaint in *Swartz* (like AlterG's complaint) was sufficient as to certain

22    allegations for multiple defendants, because each would be liable for the misrepresentations of their co-

23    conspirators, and since plaintiff had pled a conspiracy, the allegations concerning the misrepresentations

24    of those defendants were sufficient.[8]  *Id.* at 764 ("Participation by each conspirator in every detail in the

25    execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing

26

27

---

28    [8] Similarly, AlterG has pled a civil conspiracy against all Defendants as joint tortfeasors.

16

different tasks to bring about the desired result").  Thus, AlterG's allegations for false advertisement are sufficient as to all Defendants.

## I.      AlterG Has Put Defendants on Notice of Their Trade Libel Against AlterG

Trade libel is an intentional disparagement of the quality of property which results in pecuniary damage to plaintiff.  *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 984-85 (N.D. Cal. 2010).  In order to state a claim for trade libel, plaintiffs must allege:  (1) publication, (2) absence of justification, (3) falsity, and (4) direct pecuniary loss.  *Id.*

AlterG has alleged that Defendants have told customers and prospects false statements to denigrate AlterG and AlterG's technology, falsely claiming that AlterG was going out of business, is in poor financial health, and will not be able to get Woodway treadmills anymore.  Compl., ¶ 45.  Defendants have also falsely stated to customers and prospects that AlterG DAP technology is inferior to that of Boost and that Boost is an equal or better system than AlterG DAP technology (it is not).  (*Id.*)  Defendants' publication of these false statements were made for the purpose of unfairly competing with and harming AlterG.  (*Id.*)  Defendants know the statements to be false, and such false statements have caused AlterG monetary damages (AlterG has lost sales of at least 20 units of treadmills to Defendants because of their false statements), price erosion, and other harm to AlterG and the consuming public.  (Compl., ¶46.)

Defendants cite to *Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766, 733 (1985), claiming that AlterG has not sufficiently pled its trade libel cause of action.  However, the case is not comparable to AlterG's pleading and, in fact, supports a broad view of injury in pleading the trade libel cause of action.  The *Nichols* court stated, however, "[i]t is not absolutely necessary that the disparaging publication be intentionally designed to injure.  If the statement was understood in its disparaging sense and if the understanding is a reasonable construction of the language used or the acts done by the publisher, it is not material that the publisher did not intend the disparaging statement to be so understood."  *Id. citing* Rest.2d Torts, § 629, com. f, p. 350.  Further, the *Nichols* case is not comparable to AlterG's trade libel pleading since the *Nichols* plaintiff had not alleged any defamatory statement by the defendant.  *Id.* 774.  The plaintiff was attempting to incorporate by reference the alleged defamatory statements which the court did not permit.  *Id.* ("we have difficulty with the concept of incorporation by

reference into Calsat's complaint an essential element of disparagement (a publication) from statements in attached reports which are only inferentially defamatory in character").  In contrast, AlterG has specifically pled the defamatory statements in its Complaint.  Compl., ¶¶ 45-46.  Further, Defendants' citation to *Erhlich v. Etner*, 224 Cal. App. 2d 69 (1964) actually supports AlterG's position.  The *Erhlich* court in citing *Wright v. Coules*, 4 Cal. App. 434 (1906), stated, "[a] general allegation . . . of people being dissuaded by reason of a publication from making any contract with or coming to the hotel, or giving it their patronage, is sufficient."  *Erlich v. Etner*, 224 Cal. App. 2d 69, 74 (1964).  AlterG's allegations as outlined above are substantially more than provided in *Erlich* and sufficient to put Defendants on notice of their wrongful conduct.

**J.**     **Defendants Have Unlawfully Competed Against AlterG**

"California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent."  *Luxul Tech., Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015); Cal. Bus. & Prof. Code § 17200.  The UCL's coverage is "sweeping," and its standard for wrongful business conduct is "intentionally broad."  *Luxul Tech., Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) (internal citations omitted.)  The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices," which the UCL then "makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 168, 180 (1999) (internal quotation marks and citations omitted).  A business practice violates the unfair prong of the UCL if it is contrary to "established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  *McKell v. Wash. Mut*., Inc., 142 Cal. App. 4th 1457, 1473 (2006).

AlterG has alleged Defendants have unlawfully, unfairly, and fraudulently competed against it.  As discussed for each cause of action above, Defendants have wrongfully infringed and misappropriated AlterG's intellectual property, breached their non-disclosure and confidentiality contracts with AlterG, intentionally interfered with contracts and prospective economic advantage, falsely advertised the Boost One, and commercially disparaged AlterG.  *See generally* Compl.

Further, these same actions are also unfair because they have caused injury to consumers by false claims relating to the performance of the Boost One (*see* Compl., ¶¶ 44-46).  AlterG has sufficiently

1    alleged its UCL cause of action as did the plaintiff in *Luxul Tech., Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d

2    1156, 1174 (N.D. Cal. 2015) ("Plaintiff alleges that Defendant 'wrongfully and unfairly represented to

3    third parties that Luxul's business and/or products are affected by legal issues that do not exist.' FAC ¶

4    42. More specifically, Plaintiff avers that Defendants made representations to actual and potential

5    customers, including a 'potential customer in California,' regarding an alleged patent action against

6    Luxul in Taiwan. *Id*. ¶ 29." Here, Plaintiff has adequately pled that Defendants' representations have

7    resulted in lost sales to potential customers and damaged the value of Plaintiff's brand.).

8            Finally, as to Defendants' argument regarding the UCL's restitution remedy, AlterG has alleged

9    throughout its Complaint that Defendants have misappropriated its property and from it obtained money.

10    Compl., ¶¶ 42-43, 83, 107. Thus, AlterG has appropriately pled a UCL cause of action, because

11    Defendants have unlawfully and unfairly taken actions against AlterG and the consuming public that are

12    actionable and subject to appropriate restitution, profit disgorgement, and other equitable remedies.

13    **K.      AlterG's Conspiracy Claim Is Proper**

14            Defendants' only argument on this claim is that conspiracy cannot be a standalone cause of

15    action. Obviously, the conspiracy allegations in the AlterG complaint come after 29 pages and 9 causes

16    of action that precede it and are incorporated within it. Though a plaintiff may plead its conspiracy

17    cause of action subsumed within another tort, it does not have to. A conspiracy cause of action can

18    properly be pled by itself. Indeed, various courts have permitted a conspiracy cause of action separate

19    and apart from other causes of action. *See Jasmine Techs., Inc. v. Rodime, Inc*., Case No. C 89-1379

20    BAC, 1992 U.S. Dist. LEXIS 14627, at *7 (N.D. Cal. Sep. 8, 1992). In addition, courts have found that

21    a corporate entity may be included as part of the conspiracy. *Planned Parenthood Fed'n of Am., Inc. v.*

22    *Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 829 (N.D. Cal. 2016) ("the allegations adequately identify

23    and link each defendant, including Merritt, to the underlying tort they are alleged to either have

24    committed directly or conspired to commit. FAC ¶¶ 56-58, 62  [. . .] at this stage of the litigation, those

25    allegations will not preclude the assertion of a conspiracy claim.") citing *AccuImage Diagnostics Corp*

26    *v. Terarecon*, Inc., 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003) (recognizing the single-entity rule does

27    not apply in cases where directors and officers of a corporation directly order, authorize, or participate in

28    the tortious conduct).

1    AlterG's conspiracy cause of action is properly pled and should not be dismissed.

2    **III.    LIBERAL POLICY OF AMENDING PLEADINGS**

3         Should the court determine that any of AlterG's claims are deficient in any respect, AlterG

4    requests leave to file an amended complaint.  Under Rule 15(a) of the Federal Rules of Civil Procedure,

5    leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

6    of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United*

7    *States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  "Accordingly, Rule 15's policy of favoring

8    amendments to pleadings should be applied with 'extreme liberality.'"  *Id.*  "Dismissal without leave to

9    amend is improper unless it is clear [. . .] that the complaint could not be saved by any amendment."

10   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (internal citations

11   omitted).  AlterG respectfully requests that the Court grant leave to amend should the Court grant any

12   part of Defendants' Motion.

13   **IV.    CONCLUSION**

14        Defendants' Motion was brought to tell its purported story of "independent "development of the

15   Boost One and to cast aspersions onto AlterG.  The Defendants know that each one of AlterG's causes

16   of action has been pled with sufficient allegations to put Defendants on notice of their wrongful

17   conduct and malfeasance in violating AlterG's intellectual property rights and unfairly competing

18   through false claims about the Boost One and disparagement of AlterG.  The motion to dismiss

19   AlterG's complaint should be denied in its entirety.

20

21   Dated:  March 13, 2019                         MICLEAN GLEASON LLP

22

23

24   By: _____

25        David J. Miclean
          Carmen M. Aviles
          Attorneys for Plaintiff AlterG, Inc.

26

27

28